## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| KRISTY FLICKINGER, | : | Case No. 3:23-cv-00130 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| DOUGLAS A. COLLINS, Secretary of | : | |
| the Department of Veterans Affairs of the | : | |
| United States, | : | |
| | : | |
| Defendant. | : | |

# DECISION & ORDER

Plaintiff Kristy Flickinger previously worked as a Therapeutic Radiologic Technologist at the Dayton Veterans Administration Medical Center ("Dayton VAMC"). Effective April 22, 2022, while Plaintiff was a probationary employee, Dayton VAMC terminated her employment because she refused—based on her religious beliefs—to be vaccinated for COVID-19 or submit to nasopharyngeal testing for COVID-19. Plaintiff exhausted her administrative remedies and then filed this lawsuit against Defendant Secretary of the Department of Veterans Affairs ("Defendant Secretary") for wrongful termination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act of 1973.

Currently pending before this Court is Defendant Secretary's Motion for Summary Judgment (Doc. No. 17), which has been fully briefed. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

1

I.      STATEMENT OF FACTS

The following facts are taken from the admissible evidence contained in the depositions, declarations, and authenticated exhibits that were submitted and relied upon by the parties. As it is required to do, the Court construes the facts set forth below in favor of Plaintiff, as the non-moving party, and draws all reasonable inferences in her favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A.      Plaintiff Was Hired As A Probationary Employee

Before she was hired, Plaintiff asked Dayton VAMC Human Resources Specialist Shalonda Harris whether she would be a probationary or permanent employee, given that she had prior federal service. (Flickinger Dep., Doc. No. 17-1, PageID 1025-26.) It was of the utmost importance to Plaintiff that her prior federal service be credited toward her employment with Dayton VAMC, both for purposes of calculating her retirement and pension benefits and "to eliminate any probationary period." (Flickinger Decl., Doc. No. 23-2, PageID 1405-06.) Plaintiff "would not have accepted the position with probation contingency" and "relied on [her] accepted employment offer to be accurate and true." (*Id.* at PageID 1410.)

On May 20, 2021, Harris notified Plaintiff in writing that: "It is our pleasure to confirm you selection for the position of Therapeutic Radiologic Technologist with Therapeutic & Diagnostic Imaging Service at the Dayton VA Medical Center." (5/20/21 Letter, Doc. No. 17-1, PageID 1088.) The 5/20/21 Letter also stated:

Appointment Type: Permanent

Probationary/Trial Period: Previously completed.

2

(*Id.*) The following month, Harris sent Plaintiff a signed copy of the 5/20/21 Letter at her request. (Doc. No. 17-1, PageID 1091-94.)

Plaintiff's employment with Dayton VAMC effectively began on July 18, 2021, although her first day of work was on July 19, 2021. However, Plaintiff was ***not*** hired as a permanent employee. Instead, the Notification of Personnel Action (Standard Form 50), which was approved on July 27, 2021, hired Plaintiff as a "conditional" employee. (7/27/21 Form, Doc. No. 17-2, PageID 1100.) The Form also stated: "Appointment is subject to completion of one year initial probationary period beginning 7/18/21." (*Id.*)

To explain this discrepancy, Defendant submitted a declaration from Dayton VAMC Supervisory Human Resources Specialist Willie Turner Jr., who supervises Harris. (Turner Decl., Doc. No. 17-2, PageID 1095-98.) Turner explained that Dayton VAMC could not lawfully give Plaintiff credit for her prior federal service, for two reasons. The first reason is that "[o]nly prior federal service in the same agency can be credited to an employee's probationary period." (*Id.* at PageID 1097-98 (citing 5 CFR 315.802(b)(1)).) Plaintiff's prior employment was with a U.S. Department of Defense facility, not a Veterans Administration facility. (*Id.*) The second reason is that the new employer can only give prior credit if there is no more than a 30-day break in service between the past and new employment. (*Id.* at PageID 1098.) Plaintiff, however, had a ten-year break in service. (*Id.*)

Nevertheless, based on her communications with Harris, Plaintiff believed that she was a permanent employee. Plaintiff did not know that Dayton VAMC considered her to be a probationary employee until December 13, 2021, when her immediate supervisor,

3

Amber Gabbard, gave Plaintiff a memorandum titled "Probationary Period." (12/13/21

Memo, Doc. No. 17-1, PageID 1085.) The 12/13/21 Memo stated, in relevant part:

1.    Your current appointment under excepted appointment as a
      Therapeutic Radiologic Technologist has a one (1) year
      probationary/trial period which commenced on 7/18/2021.

2.    SPECIFICATION: Conduct failure, eavesdropping on private
      supervisory phone meeting in supervisor's office, invasion of
      privacy, and being argumentative/accusatory when informed of
      inappropriateness.

3.    As noted above, you are currently serving a one (1) year
      probationary period, the purpose of which is to determine your
      fitness for continued federal service. This determination is made
      based on your performance and/or conduct (which includes
      attendance) on the job. Any further deficiencies in conduct,
      performance or attendance may affect the decision to retain you
      beyond the probationary period.

(*Id.*)

After Plaintiff received the 12/13/21 Memo, she informed Gabbard that she was

"not a probationary employee, per [her] commitment letter." (Flickinger Dep., Doc. No.

17-1, PageID 1013-14; Flickinger Decl., Doc. No. 23-2, PageID 1408.) Plaintiff spoke to

her union representative, who assured her that she would address the issue with Gabbard.

(Flickinger Decl., Doc. No. 23-2, PageID 1409.) Because Plaintiff heard nothing further

about the issue, she believed that it had been resolved and Dayton VAMC understood

that she was not a probationary employee. (*Id.*)

**B.    Plaintiff Was Employed As A Therapeutic Radiologic Technologist**

Plaintiff was employed as a Therapeutic Radiologic Technologist. The vast

majority of Plaintiff's patients were treated for cancer. (Gabbard Dep., Doc. No. 17-4,

4

PageID 1125-26.) Plaintiff's job required her to deliver radiation to patients as directed by a radiation oncologist. (*Id*.; Flickinger Dep., Doc. No. 17-1, PageID 1001-02.) After a patient laid on the table and removed clothing to expose marks on their body, Plaintiff "would use some lasers, level the person out, straighten them, put them on their marks and step out of the room to do imaging." (Flickinger Dep., Doc. No. 17-1, PageID 1002.) Although Plaintiff could sometimes instruct a patient to move a certain way or "utilize a sheet and roll them or straighten them," she did have to touch patients. (*Id*. at PageID 1000, 1002-03.)

### C. Plaintiff Requested Exemptions From Dayton VAMC's COVID-19 Vaccine And Testing Requirements Based Upon Her Religious Beliefs

On August 13, 2021, Defendant Secretary implemented a COVID-19 vaccine mandate. Shortly thereafter, on August 31, 2021, Plaintiff sought a religious exemption by submitting a request to Employee Occupational Health. (COVID-19 Vaccination Form, Doc. No. 17-7, PageID 1260; Flickinger Dep., Doc. No. 17-1, PageID 1028.)

On October 4, 2021, Defendant Secretary issued a policy that required employees of Dayton VAMC to either certify and provide proof of vaccination status or request an exemption. If the exemption is granted, then the employee must comply with additional requirements that include wearing a mask, physical distancing, and regular testing.

On December 20, 2021, Dayton VAMC required unvaccinated employees to undergo nasopharyngeal testing once a week. The next day, Plaintiff reiterated her request for religious exemptions to the COVID-19 vaccine and testing requirements. (12/21/21 Letter, Doc. No. 23-1, PageID 1368-70.)

**D.      At Times, Plaintiff Was Isolated From Patients And Staff While Her Exemption Requests Were Pending**

On December 23, 2021, Gabbard advised Plaintiff that due to her non-compliance with the COVID-19 vaccination and testing requirements, she would be detailed to a position with no patient contact and minimal staff contact. (12/23/21 email from Gabbard to Flickinger, Doc. No. 17-4, PageID 1152.) Plaintiff continued to keep her job title and receive her full salary. (Flickinger Dep., Doc. No. 17-1, PageID 1045.) Because she was required to sit in a room without windows and was only occasionally given assignments, she felt like she was being harassed and subjected to a hostile work environment. (*Id.* at PageID 1061-63.)

On January 20, 2022, Dayton VAMC paused the testing mandate for unvaccinated individuals because the rate of community transmission was low. (1/20/22 email from Gabbard to Flickinger, Doc. No. 17-4, PageID 1151.) Plaintiff was allowed to return to her normal duty station, but was required to wear an N-95 mask. (*Id.*)

On February 14, 2022, Plaintiff was again detailed to a location with no patient contact and minimal staff contact because the rate of community transmission had risen.

On March 16, 2022, Dayton VAMC again paused the testing mandate due to low levels of community transmission, and Plaintiff was allowed to return to her duty station.

**E.      Plaintiff's Requests For Religious Exemptions From The COVID-19 Vaccine And Testing Requirements Were Denied**

On February 14, 2022, Plaintiff received a memorandum that explained her religious exemption requests had been denied. (2/14/22 Memo, Doc. No. 17-4, PageID 1153.) It stated, in relevant part: "Your Vaccination Mandate Exception Request and

6

Testing Requirements Exception Request was denied as it was determined that approval of the exemptions would adversely affect Patient Care and Mission Accomplishment … [and] granting your requests would result in an Undue Hardship on the Agency." (*Id*.)

On March 18, 2022, Chief of Radiology John Mathis signed a form titled "Title VII Accommodation Request Determination: Religious or Pregnancy" that denied Plaintiff's requests for the accommodations of "[e]xempt from vaccination" and "saliva test instead of nasal swab." (3/18/22 Form, Doc. No. 17-8, PageID 1261-62.)  The stated reasons for the denials were identical to the reasons given in the 2/14/22 Memo. (*Id*.)

That same day, Mathis issued a memorandum to Plaintiff that required her to obtain the COVID-19 vaccination. (3/18/22 Memo, Doc. No. 23-1, PageID 1382.) The Memo also informed Plaintiff that until her vaccination was verified, she was "required to wear a face mask, physically distance, and comply with testing requirements." (*Id*.)

In his deposition, Mathis explained that Dayton VAMC did grant religious exemptions for the COVID-19 vaccine mandate, but only if the employee agreed to be tested regularly. (Mathis Dep., Doc. No. 17-5, PageID 1164-65.) He stated that Dayton VAMC did not grant requests for exemptions from both the COVID-19 vaccine mandate and the requirement to submit to regular testing if unvaccinated. (*Id*.) Mathis did not believe that two other employees, Dalisse Humphrey and Heather Payne, were granted exemptions from both requirements. (*Id*. at PageID 1167.) He explained that it was necessary to deny Plaintiff's request for both exemptions:

> In the division of radiology [where] she worked they were dealing with
> patients that had cancer, all of them, 100 percent. In varying degrees those
> patients were immunocompromised and it's our job to be as careful as we

7

> can about not making harm and in this case we're talking about secondarily passing along the virus in that time which we call COVID-19. Without testing we could not tell that she was an asymptomatic carrier of the virus and therefore potentially exposing our patients to the harm of that exposure.

(*Id*. at PageID 1173.)

Chief Health Information Officer and Staff Infectious Disease Physician Bradley Lloyd was also involved in handling Plaintiff's exemption requests. (Lloyd Decl., Doc. No. 17-6, PageID 1178-79.) Lloyd explained that Plaintiff worked with "Veterans who are actively undergoing active cancer treatment and meet the definition of high risk of poor outcome from Covid-19," and that Dayton VAMC began requiring unvaccinated employees to submit to weekly testing for Covid-19 beginning on December 20, 2021. (*Id*. at PageID 1180.) He further explained that it was impracticable to use the "spit" test that Plaintiff requested, rather than the nasal swab, because it would take five days to get the results. (*Id*. at PageID 1181-83.)

### F. Plaintiff Requested Reasonable Accommodations Based Upon PTSD

Between 25 and 30 years ago, Plaintiff was diagnosed with PTSD. (Flickinger Dep., Doc. No. 17-1, PageID 1052.) While she was employed at the VA, she did not take medication for the condition or receive treatment. (*Id*. at PageID 1055, 1057.)

In early January 2022, Plaintiff informed Dayton VAMC Human Resources Representative Jeramey Thomas that she needed accommodations for the COVID vaccine and testing requirements because she had PTSD. (Flickinger Dep., Doc. No. 17-1, PageID 1060, 1064-67.) Although Plaintiff claims that Thomas wrongly failed to acknowledge her PTSD, she also did not want Thomas to tell others at Dayton VAMC

8

about it. (*Id*.) In fact, Plaintiff restricted her emails to Thomas in a way that made it impossible for Thomas to forward them to other individuals at the VA. (Thomas Dep., Doc. No. 17-7, PageID 1250-51.)

> ### G.    Dayton VAMC Terminated Plaintiff's Employment

On April 18, 2022, Dayton VAMC Director Mark Murdock signed a letter that terminated Plaintiff's employment. (4/18/22 Letter, Doc. 17-1, PageID 1086-87.) The subject line reads: "Termination during Probationary Period." (*Id*. at PageID 1086.) The 4/18/22 Letter states, in relevant part:

1.    At the time of your excepted appointment on July 18, 2021, as a Therapeutic Radiologic Technologist … you were informed that your first year of employment would be subject to a probationary/ trial period. The probationary/trial period is an important part of the hiring process and during this time, supervisors are required to study an employee's potential closely to determine whether s/he is suited for successful government work. When it becomes apparent that an employee's conduct, general character traits or capacity do not meet the requirements for satisfactory [illegible], the supervisor is required to initiate action to separate the employee.

2.    Dr. John Mathis, Chief of Therapeutic & Diagnostic Imaging, has recommended that you be terminated from your position for failure to qualify during your probationary/trial period. Your termination is due to unsatisfactory conduct.

(*Id*.) The Notification of Personnel Action, Standard Form 50 that was approved on April 25, 2022, similarly stated, in relevant part: "Reason(s) for removal: Removed during probationary period." (4/25/22 Form, Doc. No. 17-2, PageID 1102.) Notwithstanding the stated reason for her termination, however, Dr. Mathis told Plaintiff that her employment was being terminated "because we couldn't come to an agreement on the vaccine and testing mandates or something of that sort." (Flickinger Dep., Doc. 17-1, PageID 1072.)

**H.  Dayton VAMC Did Not Terminate The Employment Of Other Employees Who Did Not Comply With COVID-19 Vaccine And Testing Requirements**

Plaintiff asserts that Dayton VAMC treated her differently than two other employees who did not comply with the COVID-19 vaccine and testing requirements.

Heather Payne is an Interventional Radiology Nurse at Dayton VAMC. (Payne Decl., Doc. No. 23-3, PageID 1438-39.) She was unvaccinated and did not submit to regular COVID-19 testing. (*Id*. at PageID 1439.) She was detailed, or isolated, along with her co-worker, Dalisse Humphrey, except during times when Dayton VAMC "put a pause on the testing program." (*Id*.) Her "detail assignment officially ended in September 2022, when [Dayton VAMC] discontinued the unvaccinated testing program." (*Id*.)

Dalisse Humphrey is also an Interventional Radiology Nurse at Dayton VAMC. (Humphrey Decl., Doc. No. 23-4, PageID 1440-41.) Like Payne, Humphrey was unvaccinated and did not agree to be tested for COVID-19. (*Id*.) She was detailed, or isolated, from patients and staff except when the testing program at Dayton VAMC was paused or discontinued. (*Id*.)

Plaintiff states that Payne and Humphrey were initially allowed to work with patients despite being unvaccinated and untested. (Flickinger Dep., Doc. No. 17-1, PageID 1040-41.) After Plaintiff complained that she was being treated differently, however, Payne and Humphrey were also isolated from patients and staff. (*Id*. at PageID 1043, 1051-52.) Neither Payne nor Humphrey explained whether their actions were motivated by religious beliefs or whether they requested religious exemptions to the COVID-19 requirements. Payne and Humphrey also did not state whether they were

10

disabled. However, Plaintiff stated that Payne and Humphrey "had religious beliefs" and "filed religious things." (*Id*. at PageID 1067-68.)

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law." *Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id*.

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely disputed, then it must support its assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). The Court may only consider ***admissible*** evidence, which does not include unsworn statements. Fed. R. Civ. P. 56(c)(2) & (4); *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847 (6th Cir. 2010). The Court is not required, however, to consider portions of affidavits or declarations that constitute inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party does not either properly support its assertions of fact or address the moving party's assertions of fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id*. (internal citations omitted).

12

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). However, the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

### B. *McDonnell Douglas* Burden-Shifting Framework

Because Plaintiff relies upon circumstantial rather than direct evidence[1] to prove her claims of discrimination and retaliation, the Court must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973) to those claims. "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process." *Id*.

Plaintiff bears the initial burden of establishing a prima facie case of either discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. If she does so, then the burden of production shifts to Defendant to "articulate some legitimate, non-discriminatory reason for [his] actions." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If Defendant does so, then the burden shifts back to Plaintiff to prove that the proffered reason for the challenged action was a mere pretext for discrimination. *Id*.

Pretext means that the defendant's proffered reasons for its actions "were not its actual reasons … and that unlawful [discrimination or] retaliation was the actual reason."

---

[1] "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543 (6th Cir. 2008).

*Kirkland v. City of Maryville*, 54 F.4th 901, 911 (6th Cir. 2022). "[S]ummary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020). The plaintiff can demonstrate pretext by showing that the defendant's proffered reasons "(1) had no basis in fact, (2) did not actually motivate [the] actions, or (3) were insufficient to motivate" the actions. *Kirkland*, 54 F.4th at 911 (quoting *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 486 (6th Cir. 2010)).

To prove that a defendant's proffered reasons did not actually motivate its actions, "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, but indirectly attacks the credibility of the proffered explanation." *Shock v. Webster Indus.*, No. 24-3944, 2025 U.S. App. LEXIS 24066, *9-10 (6th Cir. Sept. 16, 2025) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. at *10.

Alternatively, the plaintiff may prove that the defendant's proffered reasons were insufficient to motivate its actions by providing "evidence that an employee outside the protected class engaged in 'substantially identical conduct' and fared better than he did." *Shock*, 2025 U.S. App. LEXIS 24066, *10. The plaintiff must show that he or she "was similarly situated … in all material respects" to the comparator employee. *Id*.

### III. TITLE VII CLAIMS

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privilege of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). A challenged employment action may be unlawful if religion "was a motivating factor … even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). However, an employer may prevail on a Title VII claim if he "demonstrates that he is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

Plaintiff asserts several claims under Title VII. In Count One, Plaintiff alleges that Defendant impermissibly discriminated against her on the basis of her religion, both by failing to accommodate her religious beliefs and by treating her differently than similarly situated employees. (Complaint, Doc. No. 1 at PageID 13-14.) In Count Three, Plaintiff alleges that Defendant impermissibly retaliated against her for engaging in protected activity. (Complaint, Doc. No. 1 at PageID 14-15.) And in both Counts, Plaintiff alleges that Defendant created a hostile work environment in violation of Title VII. (Complaint, Doc. No. 1 at PageID 13-15.) The Court will address each claim in turn.

#### A. Title VII Religious Discrimination (Failure to Accommodate)

Plaintiff alleges that she "made numerous requests for reasonable accommodations associated with vaccination requirements and testing requirements predicated on a

15

sincerely held personal religious belief and requested a waiver from the vaccine and testing requirements." (Complaint, Doc. No. 1 at PageID 13.) Plaintiff further alleges that Defendant "failed to grant Plaintiff a reasonable accommodation and failed to engage in an effective dialogue with her regarding the accommodation/waiver required." (*Id.*)

"The heart of the failure-to-accommodate claim is that an employer discharges (or otherwise discriminates against) an employee for failing a job-related requirement instead of abiding by its 'statutory obligation to make reasonable accommodation for the religious observances' of its employees." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943-44 (6th Cir. 2024) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). As noted above, the Court will apply the *McDonnell Douglas* framework to this claim.

To establish a prima facie case, Plaintiff must prove that she "(1) … holds a sincere religious belief that conflicts with an employment requirement; (2) … has informed the employer about the conflicts; and (3) … was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). In addition, Plaintiff "must show that it was the ***religious*** aspect of her [conduct] that motivated her employer's actions." *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (emphasis in original, quoting *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000)).

"Once a prima facie case is established, the burden shifts to the employer to demonstrate that accommodating the employee's belief imposes 'undue hardship' on the employer." *Pedreira*, 579 F.3d at 728 (citing *Groff v. DeJoy*, 600 U.S. 447, 454 (2023)). To prove that an undue hardship exists, Defendant Secretary must show that "the burden

is substantial in the overall context of [its] business." *Groff*, 600 U.S. at 468. If Defendant meets its burden of production, then Plaintiff must show that the assertion of undue hardship was a pretext for discrimination.

The Court assumes that Plaintiff has established a prima facie case that Defendant failed to accommodate her religious beliefs. However, Defendant has pointed to evidence that Plaintiff's refusal to be vaccinated or tested for COVID-19 created an undue hardship. Both Dr. Mathis and Dr. Lloyd explained that Plaintiff's position required her to interact with immunocompromised patients who were being treated for cancer and were particularly vulnerable to the risks of COVID-19. Dr. Lloyd further explained that Plaintiff's request to be tested by means of a spit test rather than a nasal swab was ineffective because of the turn-around time. Plaintiff did not point to evidence that would create a genuine issue of material fact as to whether these explanations are pretextual.

Resolution of this claim is straightforward, as these facts are similar to those in *Henry v. Southern Ohio Med. Ctr.*, __ F.4th __, 2025 U.S. App. LEXIS 23487 (6th Cir. Sept. 11, 2025). In *Henry*, the Sixth Circuit held that a hospital was not liable for terminating the employment of a nurse who refused to comply with the hospital's COVID-19 vaccine requirement and a COVID-19 nasopharyngeal testing requirement, due to her religious beliefs. The Sixth Circuit agreed with the district court's conclusion "that either exempting Henry from all COVID testing or using saliva testing would have imposed an undue hardship on SOMC." *Id.* at *21. The court explained:

> "Title VII does not require that safety be subordinated to the religious beliefs of an employee… [S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue

17

hardship on the employer's business." *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975) ….

Start with the exemption from all testing. We recently rejected a nearly identical challenge on undue hardship grounds. *See Wise v. Children's Hosp. Med. Ctr. of Akron*, 2025 U.S. App. LEXIS 11967, 2025 WL 1392209 (6th Cir. May 14, 2025). In *Wise*, a staff pharmacist who worked with children was dismissed by a pediatric hospital after refusing COVID vaccination and ***all*** testing for religious reasons…. Our court explained that "[t]he hospital cares for particularly vulnerable patients whose lives could be placed at risk if they were to contract the virus. It was thus paramount that Defendant take the highest precautions to ensure the safety of those patients." *Id.* [WL] at *5…. *Wise* makes clear that exempting Henry from all testing and vaccination requirements would place an undue hardship on SOMC. *See also … Savel v. Metrohealth Sys.*, 2025 U.S. App. LEXIS 16506, 2025 WL 1826674, *2 (6th Cir. July 2, 2025) (holding that exempting a 'patient-facing' employee from vaccination would impose an undue hardship).

Now consider the request for saliva testing. Even this accommodation would place an undue hardship on SOMC by increasing the delay in analyzing Henry's test results. The district court concluded that "[m]ore than doubling the time it takes to learn whether a patient-facing employee is positive for the virus unmistakably compromises SOMC's mission to serve the community and keep it safe." *Henry*, 2024 U.S. Dist. LEXIS 161562, 2024 WL 4117206, *7 (citation omitted). The district court was correct. We have held that an accommodation that significantly increases the health and safety risks of vulnerable patients constitutes an undue hardship…. And saliva testing would have presented such risks.

*Henry*, 2025 U.S. App. LEXIS 23487, *22-23. This rationale applies squarely here.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII failure-to-accommodate claim based upon religion.

### B.    Title VII Religious Discrimination (Disparate Treatment)

Plaintiff alleges that Defendant "treated [her] differently than similarly situated comparable employees in respect to the terms and conditions of her employment." (Doc.

No. 1 at PageID 13.) The Court construes the Complaint as asserting a Title VII disparate treatment claim based on Plaintiff's religion.

Under the *McDonnell Douglas*, framework, Plaintiff must establish a prima facie case of religious discrimination by showing that "(1) [s]he belonged to a protected class, (2) [s]he qualified for [her] position, (3) [s]he suffered an adverse action, and (4) the action occurred under circumstances that support an inference of discrimination." *Savel*, 2025 U.S. App. LEXIS 16506, *7 (citing *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 364-65 (6th Cir. 2007); *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1545 (2025)).

The Court concludes that Plaintiff has failed to create a genuine issue of material fact with respect to the fourth element (i.e., that she was terminated under circumstances that support an inference of discrimination). "One way to satisfy that element is through evidence that the employer treated people ***outside the protected class*** more favorably in similar situations." *Savel*, 2025 U.S. App. LEXIS 16506, *7-8 (emphasis added, citing *Macy*, 484 F.3d at 365.) Here, although Plaintiff contends that Dayton VAMC treated both Payne and Humphrey more favorably even though they also were unvaccinated and refused testing, there is no evidence that Payne and Humphrey were outside the protected class. On the contrary, Plaintiff testified that both of them "had religious beliefs" and "filed religious things." (Flickinger Dep., Doc. No. 17-1, PageID 1067-68.) Therefore, even if Dayton VAMC treated Payne and Humphrey differently, Plaintiff cannot use that fact to create an inference of religious discrimination.

19

Further, even if Plaintiff could establish a prima facie case, her claim for religious discrimination would still fail. Defendant has provided evidence of two legitimate and non-discriminatory reasons for terminating Plaintiff's employment, namely: (1) she refused to comply with Defendant's COVID-19 vaccination and testing requirements, and (2) she was a probationary employee. These explanations are sufficient to shift the burden back to Plaintiff to show that they are a mere pretext for discrimination.

Plaintiff has not pointed to evidence sufficient to create a genuine issue of material fact as to whether either stated reason is pretextual. That is, she has not shown that these reasons are not based in fact, did not actually motivate the decision to terminate her employment, or could not have warranted such an action. Although it is understandable that Plaintiff believed that she would be hired as a permanent employee, the undisputed evidence in the record shows that Defendant actually hired Plaintiff as a probationary employee. And despite Plaintiff's belief that Defendant should have granted her request for religious exemptions, she has provided no evidence that Defendant's claim of undue hardship did not actually motivate it to terminate her employment.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII religious discrimination claim based upon disparate treatment.

### C.    Title VII Retaliation

Plaintiff alleges that "on numerous occasions [she] engaged in protective [sic] activity, by advising Defendant that she was being retaliated against and subjected to a hostile working environment predicated on Defendant's denial of her requests for

reasonable accommodations associated with her sincerely held personal religious beliefs …." (Complaint, Doc. No. 1 at PageID 15.) She further alleges that "[f]or the most part Defendant ignored Plaintiff's requests, refused to engage in meaningful and effective dialogue about the requests, and instead focused on disciplining Plaintiff for her requests and eventually terminated her." (*Id*.)

Title VII provides that "[i]t shall be an unlawful practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge … under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation, Plaintiff must show that: "(1) she engaged in activity protected by Title VII, (2) her exercise of such protected activity was known by the [Defendant], (3) thereafter, the [Defendant] took an action that was materially adverse to her; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (internal quotations and citations omitted).

Notably, unlike the less demanding causation standard that applies to Title VII discrimination claims, the final element of a prima facie case for a Title VII retaliation claim requires "but-for causation," which means "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 731 (quoting *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013)). "At the prima facie stage, this burden 'is not onerous' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated

21

employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'" *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). However, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen*, 229 F.3d at 566.

If Plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008).

If Defendant Secretary meets that burden of production, then Plaintiff "must prove not only that the … proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. For example, Plaintiff may prove her claim based upon "the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000). In other words, Plaintiff's "prima facie case, combined with disbelief of [Defendant's] proffered reasons for the negative employment action, permits a finding of retaliation by the factfinder." *Imwalle*, 515 F.3d at 545.

For the reasons stated above, Plaintiff has not created a genuine issue of material fact with respect to her Title VII retaliation claim. With respect to the fourth element of her prima facie case, she has not provided evidence of a causal connection between her protected activity (i.e., requesting accommodations) and the adverse action (i.e., her termination). The temporal proximity is not sufficiently close to raise an inference of

causation, as Plaintiff requested accommodations in August 2021 and her employment was not terminated until April 2022.

Moreover, even if the Court were to consider only Plaintiff's subsequent repeated complaints about the requirement that she isolate from patients and most staff, Plaintiff cannot satisfy the applicable but-for causation standard. As described above, Defendant has provided two legitimate, non-discriminatory reasons for her termination, and Plaintiff has not pointed to evidence that would create a genuine issue of material fact as to whether these reasons are pretextual.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII retaliation claim.

### D. Title VII Hostile Work Environment

Plaintiff also asserts a Title VII claim for a hostile work environment based upon the requirement that she isolate herself from patients and staff due to her refusal to be vaccinated or tested with a nasal swab for COVID-19.

"A work environment is actionable under Title VII if the workplace is permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (internal quotations and citation omitted). To prevail on this claim, Plaintiff must establish that: "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [religion], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about

23

the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

Here, Plaintiff has not pointed to evidence that creates a genuine issue of material fact as to the second, third, fourth and fifth elements of her claim. Her sole contention is that by requiring her to isolate herself from patients and most staff members—because she declined to be vaccinated or tested for COVID-19—Dayton VAMC created a hostile work environment. But being required to isolate from other employees and patients due to the risk of infecting them with COVID-19 does not constitute "discriminatory intimidation, ridicule or insult." *Hawkins*, 517 F.3d at 333. And there is no evidence that Plaintiff was required to isolate because of her religious beliefs, rather than because of her refusal to be vaccinated or tested for COVID-19.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII retaliation claim.

## IV. REHABILITATION ACT DISABILITY DISCRIMINATION (Count Two)

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability … be subjected to discrimination … under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).

In Count Two of her Complaint, Plaintiff alleges that Defendant impermissibly discriminated against her on the basis of her disability in violation of the Rehabilitation Act. (Doc. No. 1 at PageID 14.) She asserts claims based on (1) failure to accommodate

24

her disability, (2) treating her differently than similarly situated employees based upon her disability, and (3) creating a hostile work environment.

### A.    Rehabilitation Act Disability Discrimination (Failure to Accommodate)

Plaintiff alleges that she "made numerous requests for a reasonable accommodation associated with vaccination and testing requirements predicted [sic] on her disability, Post Traumatic Stress Disorder (PTSD)." (Doc. No. 1 at PageID 14.) She further alleges that "Defendant failed to grant [her] a reasonable accommodation and failed to engage in an effective dialogue with her regarding an accommodation/waiver request. Indeed, Defendant refused further dialogue with Plaintiff and said the discussion was moot." (*Id.*)

Absent evidence of direct discrimination based upon Plaintiff's claimed disability, the Court applies the familiar *McDonnell Douglas* burden shifting framework. To establish a prima facie of disability discrimination, Plaintiff must establish: "(1) that [s]he is disabled, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodation, (3) that [s]he suffered an adverse employment action, (4) that [her] employer knew or had reason to know of [her] disability, and (5) that, following the adverse employment action, either [s]he was replaced by a nondisabled person or [her] position remained open." *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007). Alternatively, Plaintiff can satisfy the fifth element "by showing that similarly situated non-protected employees were treated more favorably." *Id*.

25

Construing the relevant evidence in the manner most favorable for Plaintiff, the Court concludes that she has failed to create a genuine issue of material fact as to the first and fifth elements of her prima facie case.

As to the first element, at the time when Plaintiff informed Dayton VAMC of her claimed disability, it had been 25-30 years since her diagnosis of PTSD. She was not being treated for it. There is no evidence, other than her own statement, that she was disabled by PTSD. Thus, she has not satisfied the first element of her prima facie case.

As to the fifth element, Plaintiff has not shown that Defendant filled her position with a nondisabled person or left the position open. Nor has she shown that similarly situated and non-disabled employees were treated more favorably. Although Plaintiff has asserted that Payne and Humphrey were not terminated despite being both unvaccinated and untested, there is no evidence in the record regarding whether they are disabled. Moreover, since they had different job responsibilities and were permanent (rather than probationary) employees, Plaintiff has not shown that they were similarly situated.

In addition, even if Plaintiff could establish a prima facie case of disability discrimination, her claim would still fail. As discussed above, Defendant has provided evidence of two legitimate and non-discriminatory reasons for her termination—namely, her refusal to be vaccinated for COVID-19 or tested with a nasal swab, and her status as a probationary employee. Plaintiff has not pointed to evidence that would create a genuine issue of material fact as to whether either reason is pretextual.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Rehabilitation Act failure-to-accommodate claim of disability discrimination.

### B.      Rehabilitation Act Disability Discrimination (Disparate Treatment)

Plaintiff alleges that Defendant "treated Plaintiff differently than similarly situated comparable employees in respect to the terms and conditions of her employment." (Doc. No. 1 at PageID 14.) This claim fails because, as explained above, Plaintiff has not pointed to evidence that creates a genuine issue of material fact as to whether she was treated differently than any nondisabled and similarly situated employee. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Rehabilitation Act disability disparate treatment claim.

### C.      Rehabilitation Act Hostile Work Environment Claim

Finally, Plaintiff claims that she was subjected to a hostile work environment because of her PTSD. But for the reasons stated above with respect to Plaintiff's Title VII hostile work environment claim, she has not created a genuine issue of material fact on this claim. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Rehabilitation Act hostile work environment claim.

V.     **CONCLUSION**

For the reasons stated, Defendant Secretary's Motion for Summary Judgment

(Doc. No. 17) is **GRANTED**. The Court awards judgment in this matter in favor of

Defendant and against Plaintiff.


**IT IS SO ORDERED**.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

28